**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MATTHEW ERNEST ASTORGA, )
)
         **Plaintiff,** )
)
v. )
)   Case No. 15-3191-CM
KEVIN VICK, et al., )
)
         **Defendants.** )
)

## MEMORANDUM AND ORDER

Pro se plaintiff Matthew Ernest Astorga brings this case, claiming that defendants Kevin Vick and Christopher Castlemen violated his constitutional right to be free from cruel and unusual punishment. Specifically, plaintiff claims that defendants used regular handcuffs on him when plaintiff had medical restrictions requiring handcuffs with extra links. Plaintiff alleges that defendants injured his shoulder when they ignored his protests that they were supposed to use different handcuffs. According to plaintiff, defendants used excessive force and violated his right to safe prison conditions.

The case is before the court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 29). Initially, plaintiff did not respond to the motion. When the court entered an order to show cause why the motion should not be granted as uncontested, plaintiff filed two documents explaining why he was unable to respond. Plaintiff did not, however, substantively respond to the motion. The court has reviewed the motion despite the absence of a direct response by plaintiff. For the following reasons, the court grants the motion.

**I.    Factual Background**

Plaintiff is a prisoner at the El Dorado Correctional Facility ("EDCF"). Defendant Castleman is a Corrections Officer II at EDCF, and defendant Vick is a Corrections Specialist I, a master sergeant, at EDCF.

Plaintiff alleges that upon returning to EDCF from a court appearance on May 7, 2015, defendant Vick placed regular handcuffs on plaintiff. According to plaintiff, he had a handcuff restriction requiring extra links, and he told defendants about the restriction. Plaintiff claims that defendants injured his shoulder by using the regular handcuffs. And while escorting plaintiff to his cell, defendant Vick yanked plaintiff's arms back several times, exacerbating the pain and causing abrasions to plaintiff's wrist. Defendant Castleman allegedly joined defendant Vick in yanking on plaintiff's arms.

At the time, plaintiff had no special wrist restraint permissions or restrictions. Although plaintiff states that he did have restrictions, he has offered no evidence but his own conclusory statement. In any event, whether plaintiff actually had restrictions is immaterial; the uncontroverted evidence shows that defendants were not aware of those restrictions. Defendant Vick checked with a nurse who worked at EDCF, who told him that there was no medical restriction for extra link restraints. Defendants escorted plaintiff to a medical examination room, where plaintiff stated that the restraints were too tight. Plaintiff did not, however, appear to be in distress. Medical staff informed plaintiff that he did not have any medical documentation for alternate restraints.

During and after being escorted to his cell with the wrist restraints on, plaintiff did not complain about any pain from the wrist restraints. Plaintiff also did not complain to medical personnel about any injury from the standard cuffing.

Once plaintiff was placed in a strip cell, defendant Castleman removed the cuff on plaintiff's left wrist through the food pass opening in the door. Plaintiff spun around, grabbed defendant Castleman's wrist, said "I got your arm, esse," and dropped down to the floor in an apparent attempt to break defendant Castleman's arm or wrist. After plaintiff was secured, defendant Castleman was seen in the emergency room for a possible broken arm. He also had to wear a brace and attend physical therapy due to soft tissue injury. After this occurrence, plaintiff was asked if he needed medical treatment, but he refused.

Plaintiff did not report any injuries until May 15, 2015, when he placed a sick call to report pain in his right thumb and shoulder allegedly due to his "cuffs being too small." Plaintiff was seen by an APRN on June 18, 2015, when he reported right shoulder pain for one month, but did not mention handcuffs. Plaintiff refused an x-ray of his shoulder on June 26, 2015.

On September 4, 2015, plainitff did get an x-ray, which showed no abnormalities. Since the May 15, 2015 sick call, plaintiff has not placed any further sick calls concerning his right shoulder.

**II.    Legal Standards**

Defendants move for dismissal or summary judgment in the alternative. The court considers evidence outside of plaintiff's complaint (including the *Martinez* report), and therefore will treat defendants' motion as one for summary judgment. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (stating a district court may sometimes consider a *Martinez* report in deciding a 12(b)(6) motion but only "[w]hen the plaintiff challenges a prison's policies or established procedures and the *Martinez* report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond"; otherwise the court must treat the motion as one for summary judgment).

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Where, as here, the plaintiff proceeds pro se, the court construes the pro se filings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). On the other hand, a plaintiff's pro se status does not relieve him from complying with this court's procedural requirements. *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants).

## III. Discussion

### A. <u>Qualified Immunity</u>

Qualified immunity protects government officials from individual liability under § 1983 unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting that qualified immunity analysis is identical under 42 U.S.C. § 1983 and *Bivens*). When a defendant raises qualified immunity, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue. *Schroeder*, 311 F. Supp. 2d at 1250. The court may consider either prong of the qualified immunity test first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff claims that defendants violated his right to safe conditions and used excessive force when using the handcuffs on him. First, the court addresses the "right to safe conditions," which is

essentially a claim that defendants were deliberately indifferent to plaintiff's medical needs. For both claims, the court will consider the question of whether plaintiff has evidence that defendants violated a constitutional right.

*1.     Right to Safe Conditions, or Deliberate Indifference to Medical Needs*

Deliberate indifference to a prisoner's serious medical needs contains both a subjective and an objective component. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). For the objective component, this court requires that the medical need be sufficiently serious, which is a category that has been defined to include a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotations omitted).

As for the subjective component, a plaintiff "must establish that defendant(s) knew he [or she] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Rauh v. Ward*, 112 F. App'x 692, 694 (10th Cir. 2004) (citing *Hunt*, 199 F.3d at 1224). Plaintiffs need not show that a prison official acted or failed to act believing that harm actually would occur to an inmate; rather, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Moreover, whether a prison official had the requisite knowledge of a substantial risk is a question of fact, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id*.

Plaintiff cannot meet the objective component of deliberate indifference because he cannot demonstrate that there was a sufficiently serious risk of harm. Plaintiff had no special wrist restraint permissions or restrictions—or at least none of which defendants were aware. It would not have been

obvious to defendants that plaintiff needed a doctor's attention because plaintiff did not complain of pain while he was being escorted or immediately after. He was able to move with enough agility in his cell to harm defendant Castleman, and it does not appear there were any outward signs of a serious medical condition. Other than saying the restraints were too tight, plaintiff did not immediately complain of any injuries or pain. And when plaintiff complained of shoulder pain, he claimed that the pain had started after the incident that is the subject of this case. The eventual x-ray showed no abnormalities.

Plaintiff also cannot meet the subjective component. There is no evidence suggesting that defendants knew that plaintiff faced a substantial risk of harm and disregarded that risk. Instead, the uncontroverted evidence shows that defendants did not know of any risk of harm and even checked to see if there was a risk of harm. *See Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (requiring that prison official know of and disregard excessive risk to inmate health or safety for Eighth Amendment violation); *see also Mata v. Saiz*, 427 F.3d 745, 760–61 (10th Cir. 2005) (holding that defendant did not act with deliberate indifference where nothing showed the nurse believed the plaintiff was suffering severe chest pain.). There is no evidence in the record suggesting that defendants acted with subjective deliberate indifference.

Because there was no violation of plaintiff's constitutional rights, defendants are entitled to qualified immunity and summary judgment on this claim.

### 2. *Excessive Force*

The test for excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (citation and internal quotation marks omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The court

balances the need for force with the force used. *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996). Whether a prisoner suffered injury and the extent of any injury are relevant inquiries when determining whether an Eighth Amendment violation occurred. *Wilkins*, 559 U.S. at 37 (citing *Hudson*, 503 U.S. at 7). A push or shove with no discernible injury, for example, may not constitute excessive force. *Hudson*, 503 U.S. at 9–10. The constitutional question for the court is whether a defendant engaged in unnecessary and wanton infliction of pain. *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001). If a defendant caused a prisoner to suffer unnecessary and wanton infliction of pain, the prisoner need not allege significant physical injuries. *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992). But if the use of force was both *de minimus* and "not of a sort repugnant to the conscience of mankind," an excessive force claim will not succeed. *Hudson*, 503 U.S. at 10; *see*, *e.g., Marshall v. Milyard*, 415 F. App'x 850, 853–854 (10th Cir. 2011) (affirming dismissal of excessive force claim where the inmate alleged that a guard grabbed him and dug his fingernails into his arm, resulting in an injury); *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (affirming summary judgment where sheriff's deputies allegedly grabbed the inmate around the neck and twisted it).

The court has previously discussed the lack of discernible injury in this case, as well as the lack of timely complaints about pain. Plaintiff alleges that defendants forced him into the handcuffs and yanked his arms, aggravating a preexisting shoulder injury. These allegations, however, are *de minimus* and not "repugnant to the conscience." There is no evidence to create a triable issue of fact whether defendants used excessive force when using the handcuffs on plaintiff.

Again, plaintiff fails to show a deprivation of a constitutional right. Qualified immunity therefore protects defendants from plaintiff's excessive force claims, as well.

    B.    <u>Eleventh Amendment Immunity</u>

Eleventh Amendment Immunity bars any monetary relief from defendants in their official capacities. *Allen v. Zavaras*, 474 F. App'x 741, 743-44 (10th Cir. 2012) ("[I]t is well established that the Eleventh Amendment precludes suits in federal court seeking retroactive declaratory or monetary relief from state officials acting in their official capacities.").

### C. Declaratory Relief

Plaintiff also asks the court to grant him "a declaration that the acts and omissions described [in his Amended Complaint] violated rights under the Constitution of the United States." (Doc. 11, at 6.) But the "Eleventh Amendment bars retrospective claims for declaratory relief against them in their official capacities" and cannot be obtained against defendants in their individual capacities. *Rossl v. Univ. of Utah*, No. 2:15-CV-00767, 2016 WL 3570620, at \*6 (D. Utah June 24, 2016).

### D. Doe Defendants

Plaintiff named two defendants who have not yet been served. These two parties have not appeared in the case. The court orders plaintiff to show cause within fourteen days of the date of this order why the court should not dismiss these two Doe defendants for failure to prosecute and for failure to timely effect service under Fed. R. Civ. P. 4(m).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 29) is granted.

**IT IS FURTHER ORDERED** that plaintiff is ordered to show cause within fourteen days of the date of this order why the court should not dismiss the remaining two Doe defendants for failure to prosecute and for failure to timely effect service under Fed. R. Civ. P. 4(m).

Dated this 17th day of April, 2017, at Kansas City, Kansas.

<u>s/ Carlos Murguia</u>
**CARLOS MURGUIA**
**United States District Judge**